[L. A. No. 11817.   In Bank.—June 30, 1932.]

JAMES W. SMITH, Respondent, v. LLOYD O'DONNELL, Appellant.

Kelby & Lawson for Appellant.

Newlin & Ashburn, W. Jefferson Davis, O'Melveny, Tuller & Myers, Walter K. Tuller, Thos. J. Straub, and W. R. Dunn, as *Amici Curiae* on Behalf of Appellant.

Frank A. Flynn, Haight & Trippet, Oscar A. Trippet, Walter L. Bruington, James, Brann & Rowe and Harmon D. Skillin, as *Amici Curiae* on Behalf of Respondent.

L. D. Uhlman for Respondent.

THE COURT.—The judgment in this action in favor of the plaintiff was reversed by the District Court of Appeal of the Second Appellate District, Division Two, the opinion having been written by Mr. Justice Thompson and concurred in by his associates. Notwithstanding the reversal of the judgment, the appellant petitioned to have the action transferred to this court for a hearing herein. Due to the novelty of the questions involved, the controversy having arisen out of a collision between two airplanes, we granted appellant's petition in order that these questions might be given further study and consideration. Since the granting of said order the cause has been orally argued by counsel for the respective parties and additional briefs have been filed by them, as well as by certain *amici curiae* appearing herein. The argu-

ment, both oral and printed, has been given our most careful attention. Our study and examination of the case thus presented lead us to the same conclusion which was reached by the District Court of Appeal. The reasons given by that court in reaching its conclusion appear to us to be logical and reasonable and the opinion based upon sound legal principle. We, therefore, adopt the opinion of the District Court of Appeal in this case as the opinion of this court upon the matters herein discussed and decided. Said opinion is as follows:

"This is the companion case to that of *Ebrite* v. *Crawford*, (L. A. 11818) *post*, p. 724 [12 Pac. (2d) 937], this day determined, and is an appeal by the defendant from a judgment against him and in favor of the plaintiff in the sum of $2,000 and costs. In addition to the facts set forth in the Ebrite case, it is necessary to note the following: O'Donnell was not engaged in carrying passengers from one terminal, i. e., from the Long Beach Municipal Airport to another fixed landing field, but rather of carrying 'Two passengers for five dollars. . . . Up and down the road toward the ocean.' In other words, he was engaged 'in the aviation business' for the purpose of taking those who might apply on a flight from the municipal field toward the ocean and back again, landing on the field whence he started. He also maintained and operated a machine shop. On the day in question a Mr. Bradford, working for the appellant, called on respondent for the purpose of getting respondent and through him respondent's brother to give them some work for the machine shop. At the suggestion of Bradford they journeyed to O'Donnell's place of business for the purpose of making respondent acquainted with O'Donnell. While there Bradford and appellant asked respondent to go for a ride. He accepted and was injured in the collision which followed.

"The trial judge gave four instructions, all based upon the proposition that the appellant was a common carrier and that the doctrine of *res ipsa loquitur* was applicable to the situation. The appellant asserts not only that he was not a common carrier and that the doctrine should not have been applied, but also that the facts do not justify the conclusion that respondent was a passenger.

■ "We therefore turn our attention to the question whether the appellant was a common carrier, and liable as such. Counsel for appellant apparently grounds his argument in two thoughts, first that there must be 'the carriage of the thing or person from one place to another on *terra firma*' in order to constitute a common carrier and second that 'so new a craft, so new an industry' ought not to 'be so classified and charged with such a liability.' His first assertion assumes as a premise and as a reason for the conclusion, the conclusion itself and the second furnishes no legal basis for the desired result. If the craft be employed as a common carrier vehicle, it is not a reason for applying different rules of liability to say that it and the industry is new. If too new, a conclusion we think unfounded, should not its owner either decline to use it for the purpose, or assume the liability incident to the use to which he puts it? Our attention has not been directed to any case wherein this question was involved, nor do we know of any in this jurisdiction. However, we have found two authorities from other forums. The first is that of *North American Acc. Ins. Co.* v. *Pitts*, 213 Ala. 102 [40 A. L. R. 1171, 104 South. 21, 23]. In that case a pilot named Lieutenant Albert Whitted visited at Camp Walton, a summer resort in Florida, over the weekends. And while so visiting he took passengers up for short flights over and around the bay, for hire, and by special contract would carry others from the resort to Pensacola and other points. To quote the opinion in part, it is said: 'He had the right to take only such persons as he saw fit; he took only white people, would not take negroes, or intoxicated persons; and it was generally understood that he was under no duty to take up passengers or make any trips unless it pleased him, or he saw fit to do so.' The supreme court of that state determined that Whitted was not operating his craft as a common carrier, but as a private carrier of passengers, basing its decision largely upon the grounds that the trips in the air were made by special arrangement, and that he did not and would not take all who applied. It is to be noted further that he had no established business, but operated at his own convenience during the week-end visits. The same collision was under the consideration of the United States Circuit Court of Appeals in the second case, that of *Brown* v. *Pacific Mutual Life Ins.*

*Co.,* 8 Fed. (2d) 996, where the same result was reached by similar reasoning, the court saying: 'He operated on such days, at such hours, and under such conditions as pleased him, and did not pretend to maintain regular schedules.' The essential difference between the instant case and the operations of Lieutenant Whitted is that here the appellant maintained a regular place of business for the express purpose of carrying those who applied. Section 2168 of our Civil Code defines a common carrier as follows: 'Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry.' Under the wording of this definition it is plain that Lieutenant Whitted was not a common carrier, and it is also almost equally certain that the appellant was, the difference being found in the language, 'Everyone who offers to the public to carry, etc.' In *Forsyth* v. *San Joaquin Light etc. Corp.,* 208 Cal. 397 [281 Pac. 620, 623], the court, after quoting the code section, employed the words found in 4 California Jurisprudence, at page 815, as follows: ' "Private carriers are such as carry for hire and do not come within the definition of the common carrier. Certain prominent characteristics mark the difference between these two classes. To impress upon one the character of common carrier it must be shown that he "undertakes generally and for all persons indifferently to carry goods and deliver them for hire; and that this public profession of his employment be such that if he refuses, without some just ground, to carry goods for anyone, in the course of his employment and for a reasonable and customary price he will be liable to an action." ' It will thus be seen as is said in *Nugent* v. *Smith,* L. R. 1 Common Pleas, Div. 19 and 423, and quoted with approval in *Georgia Life Ins. Co.* v. *Easter,* 189 Ala. 472, 478 [L. R. A. 1915C, 456, 66 South. 514, 516], that 'The real test whether a man is a common carrier, whether by land or water' (and we might now add 'or air'), 'therefore, really is whether he has held out that he will, so long as he has room, carry for hire the goods of every person who will bring goods to him to be carried. The test is not whether he is carrying as a public employment or whether he carries to a fixed place, but whether he holds out, either expressly or by a course of conduct, that he will carry for hire, so long as he has room, the

goods of all persons indifferently who send him goods to be carried.' Under this rule the books contain decisions to the effect that any of the following may be common carriers, viz., stage coaches, busses, automobiles, hackney coaches, cabs, drays, carts, wagons, sleds, elevators and in fact almost every vehicle which can be employed for the purpose. There is an interesting and instructive case, that of *O'Callaghan* v. *Dellwood Park Co.*, 242 Ill. 336 [134 Am. St. Rep. 331, 17 Ann. Cas. 407, 26. L. R. A. (N. S. ) 1054, 89 N. E. 1005, 1007], in which the question was as to whether a scenic railway was a common carrier. The court said: 'Why is not this rule (the rule of liability applying to common carriers) applicable to those operating cars upon a scenic railway such as the one here in question? The passengers carried therein are subject to great risk to life and limb. The steep inclines, sharp curves, and great speed necessarily are sources of peril. The argument of appellant that the character of this scenic railway was, of itself, notice of the danger to its passengers; that its presence and operation involved no danger to those who kept away from it; that in this regard it differed from steam and electric railways or passenger elevators in buildings; and that therefore such railway should not be held a common carrier—does not appeal to us. Should the motive which causes a person to take passage make any difference as to the degree of responsibility with which the carrier is charged? Passenger elevators are frequently operated in buildings in order to convey persons to some vantage point where they can overlook a great city, or some other object of interest, and trips on electric cars are often made solely for pleasure. . . . We think not only by fair analogy, but, on reason and sound public policy, appellant should be held to the same degree of responsibility in the management of the railway in question as a common carrier.' To the same effect see *Sand Springs Park* v. *Schrader*, 82 Okl. 244 [22 A. L. R. 593, 198 Pac. 983], and *Best Park & Amusement Co.* v. *Rollins*, 192 Ala. 534 [Ann. Cas. 1917D, 929, 68 South. 417]. We are conscious of the fact that there are some authorities *contra*, but we think the better reason supports the quotation, and that every consideration of public policy requires it. There can be no doubt under the general law of common carriers as we have found it, that those airlines which are engaged in the passenger service on

regular schedules on definite routes fall within the classification. The industry itself should be desirous of assuring the public that those who accept their invitation to travel by air will be accorded that protection which may be afforded by the exercise of 'the utmost care and diligence for their safe carriage'. (See sec. 2100, Civ. Code.) It may safely be asserted that there is no mode of transportation where the passenger's safety is so completely entrusted to the care and skill of the carrier. To indulge for a moment in the speculation which follows in the wake of the statement just made, if there are those in the business of carrying passengers in the air to-day (and we do not say there are) who are sufficiently unmindful of their humanitarian duty as to neglect to employ the utmost care in the selection and operation of their craft, the industry and the public both will benefit by the application of a rule of liability which will either require such care or ultimately eliminate them from this field of service. The appellant's testimony is that he was in the aviation business principally for the 'passenger flying' and it is also established that he maintained a definite place of business to that end; and that he had a fixed charge for the trip 'up and down the road toward the ocean'. We have no doubt that the trial judge adopted the correct yardstick of care when he instructed the jury that it was the duty of appellant to 'exercise the highest degree of care for the safety of his passengers', provided, of course, that the respondent was a passenger.

▮ "And to that question we now direct our attention. We are largely guided in our solution of this problem by the case of *Walther* v. *Southern Pac. Co.,* 159 Cal. 769 [37 L. R. A. (N. S.) 235, 116 Pac. 51, 53]. In that case Walther, an employee of the defendant, and absent on leave, was traveling on a pass issued to him as an employee and containing a provision purporting to relieve the company of liability for negligence, even though gross. The court held the releasing clause to be void under section 2175 of the Civil Code, and although the plaintiff was carried without money consideration, applied the rule of care required of common carriers. It is there said 'As such (a common carrier), under other provisions of the same chapter and other chapters, it was entitled to refuse to carry any person except upon compliance with certain requirements, includ-

ing the payment of a prescribed reasonable compensation, but, at the time of this accident at least, it could legally waive any of these requirements on the part of the passenger, and could receive and carry him for a reduced or different consideration, or altogether without consideration. But on whatever terms a common carrier of persons voluntarily receives and carries a person, the relation of common carrier and passenger exists. This is recognized by some of the authorities upholding the exemption from liability for negligence provision in the case of a passenger carried gratuitously. (See *Rogers* v. *Kennebec Steamboat Co.*, 86 Me. 261 [25 L. R. A. 491, 29 Atl. 1069].) The sole inquiry in this regard is, as has been said, whether the person was lawfully on the vehicle (see *Ohio & Miss. R. Co.* v. *Muhling,* 30 Ill. 9 [81 Am. Dec. 336]), has been voluntarily received by the common carrier on any terms for the purpose of carriage, and is not, as was the case in *Sessions* v. *Southern Pac. Co.,* 159 Cal. 599 [114 Pac. 982], a mere trespasser on the vehicle. The voluntary waiver of all claim for compensation for carriage of a person does not take away from the status of the carrier as a common carrier so far as the person carried is concerned, any more than would a special reduction in the amount of compensation charged or a special concession as to some other authorized requirement accomplish such effect. The carrier is still a common carrier as to such person, with all the obligations of a common carrier, except in so far as those obligations are limited by contract provisions which are not inhibited by law.' This case is in line with *Champagne* v. *Hamburger & Sons,* 169 Cal. 683 [147 Pac. 954], and in view of the fact that appellant here was interested in developing the goodwill of the respondent for the purpose of securing business the latter case is also very much in point. Taken together, they bring us to the conclusion that respondent was a passenger at the time. of the collision.

"As already indicated, the court in effect instructed the jury that if by a preponderance of the evidence the plaintiff established that he was a passenger and that a collision occurred between the plane in which he was riding and another as the result of which he was injured it was then incumbent on the defendant to prove either that he was free from negligence or that plaintiff could have avoided the injury by the exercise of ordinary care. In other words, the

court instructed the jury to apply the doctrine of *res ipsa loquitur* to the accident for the purpose of assisting it in determining liability. Appellant's objection to this instruction is approximately the same as it is to those already discussed. He has some other objections as, for instance, he says that the court assumed in one of the two instructions upon the question that plaintiff was a passenger. This assertion, however, is untenable because the court specifically said that the burden was upon the plaintiff 'throughout the whole case' to establish that he was a passenger. He also says that the defense of contributory negligence is not open to the carrier if plaintiff was in fact a passenger and therefore the court might as well have instructed the jury to return a verdict for plaintiff. This position cannot be maintained. In the absence of the slightest suggestion of negligence on the part of the respondent the instruction is the same as though it ended with the statement that it was incumbent on appellant to show that he was free from negligence. Furthermore the contention in this particular is concluded by such authorities as *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406 [125 Am. St. Rep. 68, 93 Pac. 106], and *Boone* v. *Oakland Transit Co.*, 139 Cal. 490 [73 Pac. 243].

"The question really is whether the doctrine was applicable under the facts proved. It should be remembered that the injury was occasioned by a collision in the air with the plane of Ebrite. The foundation or reason for the doctrine is based upon probabilities and convenience. When it is shown that the occurrence is such as does not ordinarily happen without negligence on the part of those in charge of the instrumentality, and that the thing which occasioned the injury was in charge of the party sought to be charged, the law operating upon the probabilities and the theory that if there were no negligence the defendant can the most conveniently prove it raises a presumption of negligence which the defendant must overcome by proof that there was in fact no negligence. (*O'Connor* v. *Mennie*, 169 Cal. 217 [146 Pac. 674, 676]; *Judson* v. *Giant Powder Co.*, 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020]; *Kahn* v. *Triest-Rosenberg Cap Co.*, 139 Cal. 340 [73 Pac. 164].) In other words, as is said in the first cited case: ' . . . [T]o justify its application in any case, the circumstances of the accident must be such as, unexplained, afford reasonable

evidence of want of care in a respect for which the defendant is liable in the particular action. For this reason the rule that the accident speaks for itself and *prima facie* shows negligence has been held inapplicable in many actions by an employee against his employer to recover damages for injuries sustained by the employee in the course of his employment.' The rule has been most frequently applied in common carrier cases where injury has occurred to a passenger (19 Cal. Jur., p. 714), because as is said in *Housel* v. *Pacific Elec. Ry.*, 167 Cal. 245 [Ann. Cas. 1915C, 665, 51 L, R. A. (N. S) 1105, 139 Pac. 73] : 'The reason for the application of the doctrine in such cases appears to be practically as stated in this quotation, viz.: that in view of the very high degree of care essential under the law on the part of a carrier of persons toward those who are its passengers, such a collision would not happen in the ordinary course of events if the carrier exercised such care, and that ordinarily when such an accident occurs, it is due to failure on the part of the person operating the car to use the proper degree of care in so operating it, or in other words, to "the manner in which the defendant used or directed the instrumentality under its control".' The language is peculiarly apt in the instant cause. If the proper degree of care is used a collision in midair does not ordinarily occur, and for that reason the doctrine was properly submitted to the jury.

"For reasons now to be stated, the case, however, must be reversed. If the defendant successfully established under proper instructions that he was not guilty of any negligence, and that the accident occurred solely by reason of the negligence of Ebrite, then the defendant was not answerable in damages. We have determined in the Ebrite case that the instructions given were improper and therefore there was no proper guide by which the jury could determine whether the collision was caused solely by the negligence of Ebrite."

The judgment is reversed.

Rehearing denied.