[Civ. No. 6749.   Fourth Dist.   Mar. 27, 1962.]

ALVIN W. BROYLES, SR., as Administrator, etc., Plaintiff and Appellant, v. CHARLES H. JESS et al., Defendants and Respondents.

LOWELL WEISE et al., Plaintiffs and Appellants, v. CHARLES H. JESS et al., Defendants and Respondents.

Hunter M. Muir for Plaintiffs and Appellants.

Schall, Nielsen & Boudreau and Leland C. Nielsen for Defendants and Respondents.

GRIFFIN, P. J.—This is an appeal by plaintiffs-appellants in a consolidated action from a judgment in favor of defendants-respondents, entered by the trial judge on motion under Code of Civil Procedure, section 630, following defendants' motion theretofore made for a directed verdict, which motion had been denied, and after the jury had been discharged and no verdict rendered. These actions, by representatives, are for recovery of damages for wrongful death in an airplane accident resulting in the death of Dick Edwin Broyles and Virginia Weise, against Charles H. Jess, doing business as Jess Construction Corporation, as owner of the Navion aircraft involved in this accident. It should be here noted that, by stipulation, the complaint and answer were amended to show that Jess Construction Corporation, a California corporation, is the proper party defendant. The complaint alleged that John Morgan, the pilot, was the agent and servant of defendant corporation for the flying of the aircraft and that he was acting within the scope of his authority as agent and servant of such corporation; that these two deceased were riding as passengers for hire on a trip from El Cajon to Bishop on the night of June 20, 1958; that Morgan was intoxicated and negligently operated the airplane; that defendant corporation negligently maintained the airplane and that this caused it to crash in El Cajon Valley just after the takeoff.

In a second cause of action, it is alleged that the two deceased were riding as guests of defendants and that Morgan willfully and intentionally operated the aircraft recklessly and with wanton disregard of regulations and weather conditions.

Defendants, by answer, denied generally these allegations and specifically denied that Morgan was the agent of defendants or that he was acting within the scope of his agency at the time and alleged contributory negligence on the part of the two deceased.

On a trial of the issues, the jury awarded plaintiffs damages and judgment on the verdicts was entered. The trial judge then presiding granted a motion for a new trial. On a retrial of the issues and after plaintiffs' evidence was concluded, defendants moved for a directed verdict, which motion was denied. After defendants rested, the trial judge decided to submit to the jury a written questionnaire in the following form: (1) "Was John Morgan at the time of the accident in question on June 20, 1958, the agent or employee of the

defendant Jess Construction Corporation?'' The answer was in the affirmative. (2) "If your answer to question number 1 was yes, was said John Morgan at the time of the accident in question on June 20, 1958, acting within the course and scope of his authority as the agent or employee of the defendant Jess Construction Corporation?'' The jury failed to agree on this question. Apparently the vote was five in the affirmative and seven in the negative. (3) "Was John Morgan guilty of wilful misconduct in the operation of the airplane at the time of the accident in question, which wilful misconduct was a proximate cause of the deaths of Dick Edwin Broyles and Virginia Weise?'' The answer was in the affirmative. (4) "Did Virginia Weise and Dick Edwin Broyles assume the risk incident to their riding in the airplane at the time of the accident in question?'' The answer was in the negative.

Thereafter, after some deliberation, the trial judge discharged the jury and ordered the case back on the calendar for resetting. Defendant corporation, under Code of Civil Procedure, section 630, *supra,* filed its written motion for entry of judgment in its favor in accordance with the motion for a directed verdict. The court granted the motion and entered a judgment for defendants. Plaintiffs appealed from this judgment.

The court, as reported in the record, stated that there may have been a factual question for the jury to determine as to whether Morgan was an employee of defendant corporation at that time. After examining authorities on the subject, the trial judge stated that he was convinced that the motion for a directed verdict at the close of plaintiffs' case should have been granted on the question (number 2) involving the sufficiency of the evidence to support a finding that Morgan was, at the time, acting within the course and scope of his authority as the agent or employee of defendant corporation. The trial court concluded that the evidence was not sufficient, as a matter of law, to show such authority. If this conclusion is correct, it becomes unnecessary to determine the sufficiency of the evidence as to the remaining questions and the propriety of the trial court's refusal to give an instruction on the question of res ipsa loquitur.

### PLAINTIFFS' EVIDENCE

Plaintiffs' evidence shows that the airplane was purchased by defendant corporation about six weeks prior to the time of the accident; that it was kept at Gillespie Field in El Cajon;

that Morgan had been one of the corporation's employees for one or two years, and that he did various and sundry things, such as finishing work in carpentry, part-time piloting of the airplane and teaching Jess to fly the airplane. The key to the aircraft was kept in the hangar and its location was known to Morgan.

On the night of June 20, 1958, Morgan and Broyles entered a bar and ordered drinks. According to the bartender, Morgan ordered a straight Coca Cola, Broyles had an alcoholic drink, and they invited the bartender to take a ride with them in an airplane. The bartender refused. They then asked Virginia Weise, whom they did not know, and who was seated at the bar drinking a Collins of some description, to take a ride with them. After some conversation, she accepted and left with the men about 1:30 a.m. The next morning, the bartender heard of the airplane crash and of their death. He testified that, in his opinion, all three were sober and were not intoxicated when he saw them.

The coroner testified that the bodies were found on the left side of the airplane and the airplane was equipped with dual controls; that the blood check showed the blood alcohol content of Morgan to be .105 per cent; Broyles, .126 per cent; and Mrs. Weise, .116 per cent.

The airport attendant testified that he heard the airplane tuning up at about 2 a.m., and that as it was about to start off of the runway he went to inquire about it for security purposes, to see who was operating it, and also for the purpose of checking the operator for sobriety; that when he saw that it was Morgan at the controls, he did nothing further. He said he had seen Morgan operate the aircraft before and at night.

Plaintiffs called Emily Morgan, wife of the pilot Morgan, as their witness. She testified generally that she had possession of Morgan's log book, which he left at home; that as far as she knew Morgan had been working for Jess up to that time and that she had never been informed otherwise; that he worked part-time on occasions; that on his death she did not make application for workmen's compensation because she did not believe she was entitled to it. She testified that she did not do so because she didn't honestly believe he was working for Jess at the time. This latter portion of her testimony was stricken from the evidence.

A Norman Williams testified that he had worked off and on for defendant corporation for five years; that he knew

Morgan for seven years; that Morgan worked for Jess as a carpenter part-time and that he did so on June 17, 1958; that he had seen Morgan take various airplanes off the ground and that Morgan was working for Jess on June 20, 1958; that he saw Morgan fly this airplane over defendant's subdivision tract on June 20, 1958, at approximately 3 p.m. and drop two paychecks to workmen in a coffee can because the bookkeeper had forgotten them and that on the following day Morgan was killed. On cross-examination, it was shown to the witness that Morgan was killed on June 20, 1958, at 3 in the morning. The witness then changed his story and said he was "a little mixed up" and said it was a day or two before June 20.

Another witness testified that he knew Morgan and that he once flew in this same airplane with him about five weeks before the accident; that he had also flown the airplane and that its condition was "not too good" and that there was a bind in the steering apparatus.

Another witness testified that he lived about three-quarters of a mile from the airport; that he was attracted that night by the sound of the airplane motor and that it sounded "erratic," as though making a low "lazy eight," and then he heard a crash.

## DEFENDANTS' EVIDENCE

Mr. Jess testified generally that he was president of the corporation; that his corporation had owned the airplane involved in this accident for about four or five weeks; that he had a pilot's license since 1957; that he flew the aircraft the day before the accident and it was in good running order and he had no trouble with it; that no one ever used the airplane without his permission; that Morgan had been employed by his corporation off and on for two or three years as a finish carpenter and pilot; that Morgan gave him instructions in Jess's Cessna 180 airplane which he had previously owned, and that they flew together on occasions; that Morgan did suggest to him that he should buy the Navion after he had disposed of the Cessna and did represent to him that it could also be used to fly charter parties, but that he never did so. Jess further testified that he found out that Morgan claimed to have taken a charter party to Las Vegas during this period without his authority and turned in no money for it; that he fired him because he failed to turn over the money; that he issued orders that there would be no more flying of the air-

plane without written permission from him; that he never gave permission to Morgan to fly this airplane to the subdivision tract to deliver any checks for workmen and that neither he nor anyone else authorized Morgan to take the fatal trip on the night of June 20.

The bookkeeper for defendant corporation testified, having before her Morgan's employment record, that he was a finish carpenter the first three months of 1958; that he presented a claim for flying on May 27, 1958 (eight hours) and on June 17, 1958 (28 hours), and that he was paid off for this claimed service and that his log book so showed. She testified Jess only flew the aircraft to entertain business acquaintances and friends.

It is now argued by plaintiffs that from the evidence the jury might well determine that Morgan was intoxicated and was guilty of willful misconduct in the operation of the airplane so as to bring him within the provisions of Public Utilities Code, section 21406, which provides:

"A guest riding in or upon any aircraft without giving compensation, or any other person, does not have any right of action for civil damages against the airman flying the aircraft or against any other person otherwise legally liable for the conduct of the airman, on account of personal injury to, or. the death of, the guest during such ride, unless the plaintiff in the action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the airman."

It is also argued that the evidence and inferences that may be rightfully deduced therefrom sufficiently place the passengers in the airplane in the same category as passengers on a common carrier and that the law applicable thereto was also applicable here. (Citing *Smith* v. *O'Donnell,* 215 Cal. 714 [12 P.2d 933]; *Champagne* v. *Hamburger & Sons,* 169 Cal. 683 [147 P. 954].) It is also claimed that the res ipsa loquitur doctrine was applicable and the court erred in refusing such an instruction. (Citing *Zentz* v. *Coca Cola Bottling Co.,* 39. Cal.2d 436 [247 P.2d 344]; *Smith* v. *O'Donnell, supra.*)

It might well appear that the evidence of intoxication of Morgan, his claimed willful misconduct, the claim that the two deceased were riding in the airplane as passengers, and that defendant corporation was a common carrier, is insufficient to support such a finding. █ However, we conclude that the evidence produced by plaintiffs, at the time the motion for directed verdict was made, lacked sufficient substantiality, as a matter of law, to show that Morgan was, at the time of the

accident, operating the airplane as the agent of defendant corporation within the course and scope of his employment.

The only evidence of the purpose of the trip comes from the testimony of plaintiffs' witness, the bartender, who testified that Morgan invited him to take a ride; that he refused and Morgan then invited Mrs. Weise to go for a ride and she accepted, saying, "Yes, I will go for a ride." It does not appear that any compensation or consideration of a tangible nature, identified definitely with the business of defendant corporation, ever passed for this ride, or that defendant corporation ever authorized such a trip or ride.

Plaintiffs rely mainly upon the proposition referred to in *Halbert* v. *Berlinger*, 127 Cal.App.2d 6, 17 [273 P.2d 274], which was an action involving an airplane ride where the pilot was the president of a closed corporation, and he was motivated by business considerations in suggesting and making the flight. The court there held that the question of whether the occupants of the airplane were guests or passengers, giving compensation or consideration for the flight, was a factual question, and said, in passing on a motion for judgment for defendant notwithstanding the verdict, that under such circumstances there was an *inference* of scope of employment. Plaintiffs contend such an inference was here established.

Even assuming such an inference was established, it is the rule, as pointed out in *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059], and *Estate of Gilbert*, 148 Cal.App.2d 761, 768 [307 P.2d 395], that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].)

Reviewing the facts here produced, we are of the opinion that the inference of permissive use (if any) relied on by plaintiffs as arising from the ownership of the airplane, has been fully and completely dispelled in this case by the positive, unequivocal and uncontradicted testimony produced by both parties to this action. (See also *Carnes* v. *Pacific Gas & Elec. Co.*, 21 Cal.App.2d 568 [69 P.2d 998, 70 P.2d 717]; *Peccolo* v. *City of Los Angeles*, 8 Cal.2d 532 [66 P.2d 651].)

Judgments affirmed.

Shepard, J., and Coughlin, J., concurred.