RED TOP TAXICAB COMPANY v. TERMINAL RAILROAD ASSOCIATION, Appellant.—15 S. W. (2d) 758.

Division One, March 29, 1929.

464

*T. M. Pierce* and *Samuel H. Liberman* for appellant; *J. L. Howell* and *R. E. Blodgett* of counsel.

*Levinson, Boisseau & Levinson* for respondent.

GANTT, J.—Injunction. Plaintiff seeks to transact a part of its business on the premises of the defendant. The facts are as follows:

Defendant is a common carrier of passengers and baggage in and about St. Louis. As such it owns and operates the Union Station in said city. Under the roof of the station building and adjacent to Market Street, the defendant maintains an open way, known as the concourse, from Market Street to the midway, thereby affording the traveler an exit through the midway and concourse to the street. Other exits are provided. Defendant leased the exclusive use of the concourse to the Brown Cab Company for $300 per month. It also granted said company the exclusive privilege of soliciting passengers in the midway, and instructed its ushers to escort or direct passengers arriving at the station and desiring taxicabs to .the cab stand of said company in the concourse; and, if said passengers did not want to patronize the Brown Company, to escort them through the concourse to taxicabs immediately outside of the concourse on Market Street. The plaintiff is a competitor of the Brown Company in the taxicab business in St. Louis, and, as such, claims these privileges and practices are unlawful discriminations.

The court found (1) that the defendant could lawfully permit the Brown Taxicab Company to use the concourse to the exclusion of the plaintiff; (2) that the defendant could not lawfully grant to said company the exclusive privilege of soliciting passengers in the midway; (3) that the defendant could not lawfully direct its ushers to escort passengers desiring taxicabs to the cab stand of said company in the concourse; (4) that plaintiff had been damaged by the solicitation for passengers and the directions to the ushers in the sum of $3500. An injunction followed restraining such exclusive solicitation of passengers, and restraining the defendant from directing its ushers to escort or direct passengers desiring taxicabs to the cab stand of said company in the concourse. Judgment was rendered accordingly, and both parties appealed.

No question arises on the pleadings. Reference to Canary Taxicab Co. v. Terminal Railroad Association, 316 Mo. 709, 294 S. W. 88, will disclose additional facts and a summary of the pleadings.

Since the trial of the instant case, we have held in the Canary case that the defendant could lawfully grant an exclusive use of the concourse. Therefore, plaintiff appears as respondent here. It insists the other questions were not involved in the Canary case. Defendant insists the principle announced in that case rules all the questions in this case.

Since the decision of the Canary case, the identical question has been twice presented to the Supreme Court of the United States. In Del. Lack. & Western Railroad Co. v. Morristown, 276 U. S. 182, an exclusive right had been granted to a cabman to solicit passengers and park his cabs in a driveway of the plaintiff company. The defendant passed an ordinance declaring that the driveway was a public cab stand, thereby authorizing other cabmen to use the driveway. The court held the ordinance void, and, in the course of the opinion, said:

"As against those not using it for the purpose of transportation, petitioner's railroad is private property in every legal sense. The driveway in question is owned and held by petitioner in the same right and stands on the same footing as its other facilities. Its primary purpose is to provide means of ingress and egress for patrons and others having business with the petitioner. But, if any part of the land in the driveway is capable of other use that does not interfere with the discharge of its obligations as a carrier, petitioner, as an incident of its ownership and in order to make profit for itself, has a right to use or permit others to use such land for any lawful purpose. [Donovan v. Pennsylvania Company, supra.]

"There was no duty upon petitioner to accord to other taxicabmen the use of its lands simply because it had granted Welsh the privileges specified in its contract with him. Petitioner is not bound to permit persons having no business with it to enter its trains, stations or grounds to solicit trade or patronage for themselves; they have no right to use its property to carry on their own business. Petitioner had no contract relations with taxicabmen other than Welsh and owed them no duty, because they did not have any business with it. The enforcement of the ordinance here assailed would operate to deprive petitioner of the use of the land in question and hand it over to be used as a public hack stand by the individual defendants and others. As to them, and so far as concerns its use as a public hack stand, the driveway was petitioner's private property and could not be so appropriated in whole or in part except upon the payment of compensation."

In Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 72 L. Ed. 682, the plaintiff, having the exclusive privilege of soliciting business and parking its cabs on the premises of a railroad company, sought to enjoin the defendant from going

upon the premises and soliciting business. The court held that the railroad company could grant such exclusive privileges, and said:

". . . The station grounds belong to the railroad company and it lawfully may put them to any use that does not interfere with its duties as a common carrier. The privilege granted to respondent does not impair the railroad company's service to the public or infringe any right of other taxicabmen to transport passengers to and from the station. While it gives the respondent advantage in getting business, passengers are free to engage anyone who may be ready to serve them. The carrying out of such contracts generally makes for good order at railway stations, prevents annoyance, serves convenience and promotes safety of passengers. [D. L. & W. R. R. Co. v. Morristown, supra.] There is here no complaint by or on behalf of passengers; no lack of service, unreasonable exaction or inconvenience of public is shown. It would be unwarranted and arbitrary to assume that this contract is contrary to the public interest. The grant of privileges to respondent creates no duty on the part of the railroad company to give like privileges to others, and therefore there is no illegal discrimination. And, as the State is without power to require any part of the depot ground to be used as a public hack stand without providing just compensation therefor, then *a fortiori* such property may not be handed over for the use of the petitioner without the consent of the owner."

Plaintiff contends that the exclusive privilege granted to the Brown Company to solicit business in the midway and the instructions to the ushers to escort or direct travelers desiring taxicabs to the Brown Company are unlawful discriminations, citing Section 23 of Article XII of the Constitution, Sections 9975-9985, Revised Statutes 1919, and the common law. These authorities were cited in the Canary case to sustain the contention that the leasing of the exclusive use of the concourse was an unlawful discrimination. We there held the discrimination forbidden by said authorities was only a discrimination with reference to facilities in transportation furnished by the defendant as a common carrier. We adhere to that ruling. The defendant is not in the restaurant, drug, barber or taxicab business. As a common carrier it is not required to furnish such services in, about or from its station, and it offers to the public no such services. As owner of the property it may lease space in the station building, including the midway, for such purposes, and it may instruct its employees to escort or direct travelers to the places in the station offering such. In addition, its tenants may be permitted to solicit business in the station and on defendant's property—all so long as said privileges and practices do not interfere with the safety or convenience of the traveling public, or with the proper discharge by the defendant of its duties as a common carrier. No member of the

traveling public is complaining of the Brown cab service, or of the solicitation for business by said company, or of defendant's ushers favoring the Brown Company by directing travelers to its cab stand. In granting said privileges and permitting said practices, the defendant acts in its private capacity and does not unlawfully discriminate against the plaintiff.

Plaintiff cites Kansas City Terminal Ry. Co. v. James, 298 Mo. 497, 251 S. W. 53, and Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106. Our views on those cases are set forth in Canary Taxicab Co. v. Terminal Ry. Assn., supra.

That part of the judgment holding the granting of an exclusive privilege to the Brown Taxicab Company to solicit business in the midway, and holding the instructions of defendant to its ushers to escort or direct travelers to the cab stand of the Brown Company in the concourse to be unlawful discriminations, and awarding to plaintiff damages in the sum of $3500, is reversed, and the cause remanded with directions to enter judgment for the defendant. All concur.