[Civ. No. 13322. First Dist., Div. One. May 28, 1947.]

JOHN P. DEMETER et al., Respondents, v. HARRY ANNENSON et al., Defendants; ELVIS DIXON, Appellant.

Nathan C. Finch and Howe & Finch for Appellant.

Crist & Beane and Frank L. Crist for Respondents.

PETERS, P. J.—Plaintiffs, John Demeter and Evelyn Knapp, doing business as the Yellow Cab Company, brought this action against defendants Harry Annenson and Theodore Brown, doing business as the Indian Cab Company, Larry Borba, doing business as the Royal Cab Company, and Elvis Dixon, doing business as the Black and White Cab Company, to enjoin these defendants from soliciting taxicab patronage, or from parking their taxicabs for the purpose of soliciting patronage, on the station grounds of the Southern Pacific Company in Palo Alto, it being alleged that plaintiffs have a contract with the Southern Pacific Company granting them the exclusive privilege of soliciting such patronage on the station grounds.

The complaint alleged and the trial court found that in June of 1939, the assignors of plaintiffs and the Southern Pacific Company executed a contract granting the Yellow Cab Company the exclusive right, in return for a fixed rental, to solicit the patronage of prospective passengers on the railroad's station grounds at Palo Alto; that that agreement was subsequently renewed and extended on substantially the same terms and conditions as set forth in the original agreement, and was in force and effect when the complaint was filed; that defendants, knowing of these exclusive rights granted to plaintiffs, nevertheless have parked their taxicabs on the railroad's station grounds for the purpose of soliciting passengers and have solicited such patronage on such grounds. Based on these findings the trial court entered its judgment enjoining the defendants from directly or indirectly soliciting taxicab patrons within the station grounds and from parking their taxicabs thereon for the purpose of soliciting such patronage. From this judgment Elvis Dixon, doing business as the Black and White Cab Company alone appeals.

Appellant's main contention is that the exclusive privilege contract between the Southern Pacific Company and respondents is invalid because, so it is asserted, it violates

public policy and is expressly forbidden by the California Constitution and statutory law. It is asserted that there is no California appellate court decision directly in point, so that the question raised is one of first impression in this state. Appellant concedes, as he must, that the majority of cases in other jurisdictions are overwhelmingly against him, but urges that the "better reasoned" common law authorities are to be found in those cases adopting the minority view, and urges this court to follow the minority view.

The cases on both sides of this issue are collected and commented on in an annotation appearing in 15 Annotated Law Reports 356 entitled "Right to give exclusive privilege of soliciting patronage at railroad stations or on trains." It there appears that in 1921, when the annotation was prepared, the United States Supreme Court, Colorado, Connecticut, Georgia, Kansas, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Ohio, Oregon, Rhode Island, Texas, Utah, Virginia, West Virginia, England and Canada had adopted the view that such contracts are valid, while but Indiana, Illinois, Kentucky, Mississippi and Montana had adopted the view that such contracts were invalid. It is the views expressed in the cases from these five states that appellant urges are the "better reasoned," and contends should be here adopted. It further appears that Michigan, Missouri and Pennsylvania have cases both ways on the subject, usually the later cases being in favor of the majority view. Since the annotation was written, three more states have been added to the majority column—Alabama, in *Wright* v. *City of Anniston*, 26 Ala.App. 109 [154 So. 597]; Florida, in *State* v. *Wells*, 96 Fla. 591 [118 So. 731, 60 A.L.R. 1072] and Iowa, in *Red Top Cab Co.* v. *McGlashing*, 204 Iowa 791 [213 N.W. 791]. Louisiana, at least by dicta, has joined the majority group. (*Kansas City, S. & G. Term. Co.* v. *Interurban Motor T. Co.*, 152 La. 1093 [95 So. 258].) In addition, the United States Supreme Court in *Black & White Taxi. Co.* v. *Brown & Y. Taxi. Co.*, 276 U.S. 518 [48 S.Ct. 404, 72 L.Ed. 681], Missouri, in *Canary Taxicab Co.* v. *Terminal Ry. Assn.*, 316 Mo. 709 [294 S.W. 88], and *Red Top Taxicab Co.* v. *Terminal R. Assn.*, 322 Mo. 463 [15 S.W.2d 758], and New York, in *Long Island R. R. Co.* v. *Summers*, 263 App.Div. 889 [32 N.Y.S.2d 430], have, since the annotation was prepared, reaffirmed their allegiance to the majority view. No cases, other than those cited in the annotation, have been found adopting the minority view.

The first two paragraphs of the annotation read as follows (15 A.L.R. 356):

"While there is no question that a common carrier may not lawfully exclude from its station grounds a passenger's own carriage, or a carriage hired by him, and it is well settled that all hackmen and baggage expressmen may be prohibited from soliciting patronage on station grounds, there is a decided conflict of opinion upon the question of the right of a railroad company to grant such a right to a favored solicitor of patronage to the exclusion of all others of like vocation.

"However, the more modern and seemingly the better-reasoned doctrine, including that of the Supreme Court of the United States, is to the effect that, in the absence of controlling statute to the contrary, such an exclusive privilege lawfully may be granted."

A reading of the opinions in the five states that have adopted the minority view discloses that the courts there involved were of the opinion that such contracts are discriminatory, stifle competition and subject the railroad's passengers to the inconvenience of having to use cabs of the railroad's choosing rather than of their own choosing. One of the leading cases adopting this view is *Montana Union Ry. Co.* v. *Langlois*, 9 Mont. 419 [24 P. 209, 18 Am.St.Rep. 745, 8 L.R.A. 753]. At page 431 the court stated: "It is a rule of universal application that the public is entitled to whatever competition may grow out of the public demands, on the one hand, and the contest of others to supply such demands and receive the compensation therefor. Are not the conditions here sought to be so controlled by the plaintiff such as to stifle the natural development of such competition?" And again at page 433 the following appears: "But has the railroad company in dealing with its passengers, and exercising a control over their movements and the conditions which surround them for the time being, a right to place one hackman in their midst with exclusive control over the common conveniences and facilities of the place at which the passenger may land, or from which he may depart, so that if the passenger obtains the use of these conveniences and facilities he must purchase the privilege from such hackmen or suffer discrimination?"

A reading of this case indicates that the Montana court was passing on a different point than the one involved in the instant case. In that case the plaintiff railroad company sought not only to enjoin the defendant cab company from entering its premises to solicit patronage, because an exclusive

privilege had been granted another company, but also sought to restrain the defendant from entering the railroad premises to pick up a passenger who desired service, and to prevent defendant from depositing a passenger headed for the depot nearer than fifty feet from the station. In the instant case the respondent does not seek such drastic relief. Respondent expressly conceded at the trial that appellant had the legal right to enter the depot premises to pick up a passenger who had telephoned for such service, and to enter the depot premises to deposit a passenger who had hired appellant to drive to the depot. The injunction simply prohibits appellant from soliciting passengers on the depot premises and from parking on such premises for the purpose of such solicitation.

The majority view holds that the granting of the exclusive right of solicitation is not discriminatory and does not violate any public policy. This view was clearly expressed by the United States Supreme Court in *Donovan* v. *Pennsylvania Co.*, 199 U.S. 279, 295 [26 S.Ct. 91, 50 L.Ed. 192], where it is stated: ''We cannot say that that arrangement was either unnecessary, unreasonable or arbitrary; on the contrary, it is easy to see how, in a great city and in a constantly crowded railway station, such an arrangement might promote the comfort and convenience of passengers arriving and departing, as well as the efficient conduct of the company's business. The record does not show that the arrangement referred to was inadequate for the accommodation of passengers. But if inadequate, or if the Transfer Company was allowed to charge exorbitant prices, it was for passengers to complain of neglect of duty by the railroad company and for the constituted authorities to take steps to compel the company to perform its public functions with due regard to the rights of passengers. The question of any failure of the company to properly care for the convenience of passengers was not one that, in any legal aspect, concerned the defendants as licensed hackmen and cabmen. It was not for them to vindicate the rights of passengers. They only sought to use the property of the railroad company to make profit in the prosecution of their particular business. A hackman, in nowise connected with the railroad company, cannot, of right and against the objections of the company, go upon its grounds or into its station or cars for the purpose simply of soliciting the custom of passengers; but, of course, a passenger upon arriving at the station, in whatever vehicle, is entitled to

have such facilities for his entering the company's depot as may be necessary.''

In a later case considering the validity of the identical type of contract—*Black & White Taxi. Co.* v. *Brown & Y. Taxi. Co.*, 276 U.S. 518 [48 S.Ct. 404, 72 L.Ed. 681], the court said (p. 526): ''The railroad company is under no obligation to transport passengers or baggage from its station. [Citing case.] It is not bound to permit those engaged in such transportation to use its property, to solicit patronage, park their vehicles or otherwise to carry on their business. The contract does not relate to the railroad company's business as a common carrier. [Citing case.]'' The court then commented on the split of authority as to the validity of this type of contract, and, in accordance with the weight of that authority, holds the ''exclusive privilege'' may validly be given. The court stated (p. 528): ''The station grounds belong to the railroad company and it lawfully may put them to any use that does not interfere with its duties as a common carrier. The privilege granted to respondent does not impair the railroad company's service to the public or infringe any right of other taxicabmen to transport passengers to and from the station. . . . The carrying out of such contracts generally makes for good order at railway stations, prevents annoyance, serves convenience and promotes safety of passengers. . . . It would be unwarranted and arbitrary to assume that this contract is contrary to public interest.''

Appellant argues that these cases can no longer be considered valid precedents for the asserted reason that in *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487], it was decided that federal courts, in deciding a common law question, are bound by the common law of the state where the litigation arose. It is undeniably true that, insofar as the two cited cases purport to state the federal common law on the subject, they have been overruled by the Erie Railroad Company case. But this factor does not render them any less potent as argumentative authorities. The reasoning in such opinions is just as sound as it was prior to the decision in the Tompkins' case. The rationale of such opinions may properly be considered by this court in determining which of two opposing policies this state should adopt.

It would unduly and unnecessarily extend this opinion to attempt to analyze the many state authorities that have announced the majority rule. Suffice it to say that most of the

decisions are based upon reasoning substantially similar to that used by the United States Supreme Court.

Although the precise point involved in the instant case has not heretofore been passed upon by a California appellate court, there are several significant cases in this state that unmistakably indicate the attitude of the California courts on this subject. In *In re Barmore*, 174 Cal. 286 [163 P. 50], the Supreme Court passed upon the validity of an ordinance which prohibited solicitation of passengers in certain places, including railroad depots. In upholding the ordinance the court stated (p. 288) : "In enacting this ordinance, the city council may well have thought that active solicitation of patronage within depots would interfere unduly with the peaceable and convenient use of such depots by arriving and departing passengers. We cannot say that such a view is unreasonable, or that the prohibition of such solicitation is not a proper means of promoting the comfort and convenience of the traveling public, and protecting it from the annoyance of importunate requests for employment."

In the case of *In re Stratham*, 45 Cal.App. 436 [187 P. 986], there was involved the validity of an ordinance prohibiting solicitation of passengers on the premises of a railroad company without the written consent of the railroad. In upholding the ordinance the court said (p. 440) : "Now, it is common experience, and nothing is suggested to the contrary, that the convenience of passengers arriving at transportation stations is promoted, and their business facilitated, by having a single agency at hand to which they can apply for service; whereas, competitive solicitation of such business has been found to be a cause of much disorder and inconvenience. . . . A person engaged in the business of carrying passengers and baggage from public transportation depots has not, in that capacity and in the absence of any contract right, a vested right to solicit business on such depot premises. This being so, the prohibition of such solicitation without written consent of the owner of the premises, while there is no prohibition to those who have such consent, is not an arbitrary and unlawful discrimination. The advantage given to the favored person (if any such there be) is only incidental to the regulation, which is enacted for the convenience and safety of travelers, and not for the purpose of discriminating between persons equally entitled to transact such business on premises devoted to public transportation business."

Appellant argues that these cases are not persuasive for the asserted reason that the power of a municipality to determine a public policy by ordinance is different from the power of individual persons to contravene public policy by private contract. The two cases are important, however, in that they recognize that the comfort and convenience of the traveling public can be contributed to by such exclusive privilege arrangements, and that such arrangements are, in fact, beneficial to the public. We must conclude, therefore, that, so far as the general common law of this state is concerned, such contracts do not violate public policy.

■ Appellant also argues that, regardless of general public policy, such exclusive privilege contracts are violative of state constitutional and statutory provisions, such as article XII, section 21, of the Constitution and section 17(a) 2, of the Public Utilities Act (2 Deering's Gen. Laws, Act 6386) which prohibit discrimination in charges or facilities by railroad companies. Appellant also might have included section 2170 of the Civil Code which is to the same effect. These arguments are now new. Similar statutory provisions exist in most of the states adopting the majority view. In the American Law Reports annotation heretofore mentioned the state of the law on this subject is summarized as follows (15 A.L.R. at p. 363) : ''. . . a question has been raised as to whether statutes, which, in general, prohibit discriminations by common carriers, render unlawful exclusive privilege contracts of the kind under consideration in this annotation. Here, again, we find a decided conflict of opinion, although in the main the decisions are to the effect that such statutes do not prohibit the granting of exclusive rights to solicit patronage on railroad premises at stations.''

A reading of the cases cited in that note in support of the above quoted statement indicates that the majority of courts consider that the statutory discrimination prohibitions apply only to the business of the carrier as such, and that the granting of an exclusive solicitation privilege is not done by the carrier in performance of its duties as a carrier.

The precise point involved has been presented to the Railroad Commission in this state in the case of *Red Line Tourists Agency* v. *Southern Pacific Company* and *Union Transfer Company*, 3 Opinions and Orders of the Railroad Commission of California, page 526. That case, while not constituting a binding precedent, is persuasive as reflecting the views of

the body charged with the regulation of intrastate carriers. The commission first held that contracts of the type here involved are valid, in that limiting solicitation of passengers to one company is for the convenience of the railroad passengers. It then passed on the question as to whether such contracts violated section 2170 of the Civil Code. That section provides that: "A common carrier must not give preference in time, price, or otherwise, to one person over another." In holding that exclusive privilege contracts did not violate this section the commission stated (p. 533): "It is evident that section 2170 of the Civil Code cannot be construed so broadly as to mean that a common carrier can not in any of its dealings give any preference to one person over another. If this construction were to be given to the section, it would be impossible for a railroad company to buy supplies for its commissary or ties for its track or stationery for its office use in any way in which a preference might be held to be given to one firm or company or individual as against another. It seems clear that this section must be interpreted in the light of the railroad company's duty to the public, and that it was not intended to apply to any transactions of a railroad company other than those performed in connection with the carrier's duty to the public."

The commission also considered the possible application of the antidiscrimination provisions of article XII, section 21, of the Constitution, and section 17(a) 2, of the Public Utilities Act (2 Deering's Gen. Laws, Act 6386), and held that such provisions were not violated by such a provision. At page 532 the following appears: "It seems clear that the foregoing constitutional and statutory provisions do not apply to the question now before this Commission. Both provisions refer to the transportation of passengers and property by the railroad company, and do not apply to the transportation by a baggage or transfer company from or to the railroad company's depot. . . ."

The appellant in the instant case also refers to section 17(b) of the Public Utilities Act. (2 Deering's Gen. Laws, Act 6386.) It provides: ". . . no public utility shall charge . . . a greater . . . compensation for . . . any service . . . rendered, than the rates, . . . specified in its schedules on file . . . nor extend to any corporation or person any form of contract or agreement or any rule or regulation or any facility or privilege except such as are regularly and uniformly extended to all corporations and persons. . . ."

The reasoning adopted by the commission in discussing the other provisions is sound and equally applicable to this last quoted section. The various statutory prohibitions against discriminatory agreements and practices by common carriers only relate to their public duty as carriers, and do not relate to incidental relationships they may enter into with third parties in carrying on their public service activity.

Appellant also contends that there is no evidence in the record that, on the date judgment was entered, May 24, 1946, there was a valid contract in existence between respondent and the Southern Pacific Company. This contention is based upon the following facts: The complaint was filed January 10, 1946. The case was tried on May 14, 1946. The evidence at the time of trial showed that the last written extension of the exclusive privilege contract had expired March 31, 1946. Before judgment respondent was permitted to amend to conform to proof to allege "that on or before March 31, 1946, said agreement was extended and is now in full force and effect," and it is the finding based on this allegation that is now challenged. The finding is supported. Worth Prine, manager of respondent, was called as a witness and identified the original contract between the Yellow Cab Company and the Southern Pacific Company, and the last written extension which expired March 31, 1946. He then testified that at the "present time," i. e., May 14, 1946, his company had an oral extension; that his company had signed the formal lease and that it was in the possession of the Southern Pacific Company; that all the terms of the formal lease had been agreed upon. At the oral argument, upon agreement of counsel, there has been filed with this court as part of the record the formal lease which had been signed June 1, 1946. By its express terms the agreement was made effective from April 1, 1946.

■ Appellant makes various contentions in connection with this state of the record, all based on the fundamental argument that the oral extension was invalid. Even if it were the fact (which it was not) that the oral extension was required by the statute of frauds to be in writing, that point cannot be raised by appellant, who is not a party to the contract. The rule is elementary that the statute of frauds can be invoked only by the parties to the unwritten contract, and is not available to third persons who are not parties to it. (*Wood Estate Co.* v. *Chanslor,* 209 Cal. 241 [286 P. 1001] ; *Burns* v. *Peters,* 5 Cal.2d 619 [55 P.2d 1182] ; see cases collected 25 R.C.L.

732, § 380; 12 Cal.Jur. 925, § 95; 49 Am.Jur. 896, § 589; 37 C.J.S. 715, § 220; Browne, Statute of Frauds (5th ed.), p. 164, § 135.) These rules are peculiarly applicable to the present case where the evidence as to the oral extension came in without objection, where the case was tried and decided on the theory that a valid oral extension had been made, and where appellant, not a party to the contract, seeks to raise the point for the first time on appeal.

The last contention of appellant is that the judgment is erroneous for the reason that the injunction, by its terms, is permanent, while the exclusive privilege contract was limited as to time and, so it is argued, any injunctive relief against interference therewith should have been limited to the duration of that contract. In view of the issues before the trial court it must be conceded that the judgment is somewhat ineptly drawn. It provides that "the defendants . . . are restrained and enjoined from in any way directly or indirectly soliciting taxicab patrons within and upon the passenger station and premises immediately appurtenant thereto of Southern Pacific Company in the city of Palo Alto, and from parking their taxicabs on said premises for the purpose of soliciting said passengers." It seems quite clear that, under the findings and evidence, the restraint imposed was intended to apply only for the term covered by the exclusive privilege contract then or thereafter in existence. The injunction merely protected respondent's contract rights. Upon the expiration of those rights the injunction would become *functus officio*. Inasmuch as the Southern Pacific Company is not a party to this proceeding, and its rights are not protected by injunction or otherwise, the only reasonable meaning attributable to the judgment is that appellant is restrained from interfering with respondent's contract rights. Out of an abundance of caution, however, and, in view of the findings and evidence, the judgment is modified to provide that the restraint imposed is limited to the duration of plaintiff's contract rights. By that is meant the period of the existing contract or any lawful extension thereof.

The judgment is modified as above indicated, and as so modified is affirmed; respondent to recover costs on appeal.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1947.