[No. F040732. Fifth Dist. Jan. 8, 2004.]

BURNIS SIMON et al., Plaintiffs and Appellants, v.
WALT DISNEY WORLD CO., Defendant and Respondent.

[No. F040879. Fifth Dist. Jan. 8, 2004.]

BURNIS SIMON et al., Plaintiffs and Respondents, v.
WALT DISNEY WORLD CO., Defendant and Appellant.

## COUNSEL

Law Offices of Herbert Hafif, Greg K. Hafif; Law Offices of Alan Himmelfarb and Alan Himmelfarb for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Dewey Ballantine, Matthew M. Walsh; Quinn Emanuel Urquhart Oliver & Hedges and Sanford M. Litvack for Defendant and Respondent and for Defendant and Appellant.

## OPINION

**WISEMAN, J.**—As we celebrate Mickey Mouse's 75th birthday, we are called upon to address the legal status of Disneyland in the context of its Resident Salute program, a marketing concept that offers nearby residents a discount as an incentive to visit during the slow season. Essentially, during certain times of the year, if Mickey lives in Los Angeles, he pays $8 to $10 less per ticket than his girlfriend, Minnie, assuming she lives in some far-off land such as Oz or Fresno.

Recognizing there is no such thing as a "free ride," Disney fans fork out lots of money to buy a ticket to enter the Magic Kingdom and partake of its many sights and sounds. Appellants allege that Disney discriminated against them by offering cheaper admission tickets to nearby residents than all others and that doing so is unlawful because Disney is a "common carrier" under Civil Code section 2168.

We conclude that Disney is not a common carrier under section 2168 with respect to all who pay admission to enter its Disneyland theme park in Anaheim, California. If we were to conclude otherwise, the next logical step would be to characterize a baseball park as a common carrier or a movie theatre as a common carrier—just because they also contain elevators, escalators and other people-moving devices. In reaching our conclusion, we offer no opinion regarding whether any particular ride within the Disneyland theme park is or is not a common carrier as it is irrelevant to our decision regarding the park as a whole.

### PROCEDURAL AND FACTUAL HISTORIES

The material facts are not in dispute. Disney operates the 86-acre Disneyland theme park in Anaheim, California. Since at least 1993, Disneyland has periodically offered a discount to residents of Southern California known as

the "Resident Salute" promotion (the Promotion). The Promotion has permitted residents of zip codes 90000 through 93599 in Southern California to purchase one-day adult admission tickets at a discount ranging from $8 to $10 per ticket and, until 1996, one-day children's tickets at a discount ranging from $1 to $3 per ticket.

A one-day adult or child's admission ticket to Disneyland entitles the guest to enter the park during regular business hours. Upon entering, guests are permitted to make unlimited use of the park's attractions and other forms of entertainment. These include parades and shows, elaborate indoor and outdoor stages and sets, fanciful Disney characters who interact with the guests, themed restaurants and shops, fireworks displays, stage shows, collector pin trading, music and live bands, storytelling, arcades and other attractions, including amusement rides. For instance, as a single example of a popular attraction, from 1992 to late 2001 (and then seasonally), Disneyland regularly presented Fantasmic!, a show on the Rivers of America in which water from the river is sprayed upward to create a screen. Scenes from Disney's Fantasia (2000) are projected onto the water screen while live Disney characters on Tom Sawyer Island and floating stages interact with these scenes, all choreographed to music and fireworks.

On a typical day, a Disneyland guest has access to between 60 and 110 restaurants and other food locations, between 65 and 100 shops and merchandise locations, and more than 80 attractions and entertainment activities other than amusement rides. Disneyland guests are entitled to unlimited use of these attractions and other forms of entertainment without any additional charge, except if they wish to purchase food or merchandise or play an arcade game. With respect to amusement rides, guests are free to take as many or as few rides as they wish without charge, or take none at all. A guest's decisions are irrespective of the price of a one-day admission ticket, which is paid for prior to entry, and the price of which is not affected by the guest's choice of activities or the number of activities engaged in while inside the park.

On August 7, 1997, a class action complaint was filed against Disney, alleging a single cause of action based on violation of Civil Code section 2168 et seq.[1] On April 17, 1998, appellants Burnis Simon and Aurelio Marquez, individually and on behalf of others similarly situated, Robert VanTichelt and Janice VanTichelt, in the public interest (plaintiffs) filed a first amended complaint alleging four causes of action: 1) violation of section 2168 et seq.; 2) violation of section 51 et seq., on behalf of an international class; 3) violation of section 51 et seq., on behalf of a national class; and 4) violation of Business and Professions Code section 17200 et seq. The court sustained without leave to amend Disney's demurrer to the second and third

---

[1] All further references are to the Civil Code unless otherwise specified.

causes of action for violation of section 51—the Unruh Civil Rights Act claims. We affirmed that ruling. (See *Simon v. Walt Disney World Co.* (Nov. 7, 2000, F031551) [nonpub. opn.].)

On June 25, 1998, plaintiffs filed a motion to certify a class action with respect to the remaining causes of action. The court denied the motion for class certification, concluding:

"Here, . . . [plaintiffs] [argue] that Disneyland is a common carrier under . . . section 2168 because of the amusement rides that it operates within Disneyland. While there are individual rides within theme parks that may be treated as common carriers for the purpose of heightened duty of care owed passengers injured on those rides, this is not the issue in the instant case. This issue in this case is whether or not the price of admission equals the price charged for carriage on the rides thus making Disneyland a common carrier. There is no California case that holds that which . . . [plaintiffs] [assert]. This Court finds there is not a realistic chance for recovery in this case and on that basis alone, the Court finds it is sufficient to deny the motion to certify the class action." The court also denied the motion based on two additional grounds: 1) each potential class member would be required to litigate unique matters concerning the right to recover; and 2) there would not be a substantial benefit to the litigants of the case.

While the case was pending on appeal, the California Supreme Court decided *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429 [97 Cal.Rptr.2d 179, 2 P.3d 27]. In *Linder*, the Court held that certification of a proposed class generally should not be conditioned upon a showing that class claims for relief are likely to prevail, and the benefits of certification are not measured by reference to individual recoveries alone. (*Id.* at pp. 443, 445–446.) As a result of *Linder*, we found that two of the three bases for the trial court's denial of certification were improper. (See *Simon v. Walt Disney World Co.*, *supra*, F031551.) In considering the remaining ground—a failure of plaintiffs to show a community of interest among putative class members—we reasoned as follows:

"It appears to us that, based on the holding in *Neubauer* [*v. Disneyland, Inc.* (C.D.Cal. 1995) 875 F.Supp. 672], the court here felt it would be necessary for a putative class member to have been on a ride to establish [Disney's] common carrier liability. [Disney] additionally made the argument at the motion hearing that the difference in admission price a class member might be entitled to as a result of this action would have to be apportioned between rides and other activities the class member enjoyed during his or her visit, such as parades or fireworks shows. We do not agree.

"There is a distinction between an individual amusement park *ride* being determined to be a common carrier for the purposes of injury liability as in *Neubauer*, and an entire amusement park being a common carrier. At issue here is not liability for any physical injury based on the duty of care set forth in section 2100, but rather an alleged preference based on price in violation of section 2170. In this context, we view the issue of whether [Disney] is a common carrier as a 'yes or no' proposition for all who entered the park. Either [Disney], in its capacity as an amusement park and its charging of an admission price, is a common carrier as to all who pay that admission price, or it is not. Whether an individual patron elected to be a passenger on one of the rides is irrelevant to that determination. Thus, whether [Disney] is a common carrier would be applicable to all class members, and there would be no need for individual litigation. We express no opinion here whether [Disney] is or is not a common carrier." (*Simon v. Walt Disney World Co., supra*, F031551.)

As a result, we reversed the trial court's order denying class certification and remanded the matter, noting:

"[O]ur findings in no way express an opinion that this case is appropriate for class action treatment, or that [plaintiffs'] causes of action would withstand any subsequent formal pleading which may arise based on the merits of the action. As the court stated in *Linder*, 'although the trial court may conclude that certification is appropriate after eliminating the improper criteria and erroneous assumptions from consideration, upon a fresh look it may discern valid reasons for denying [plaintiffs'] certification motion.' [Citation.]" (*Simon v. Walt Disney World Co., supra*, F031551.)

Upon remand, plaintiffs again moved for class certification. On September 6, 2001, the court issued an order certifying a class of all persons who: 1) visited Disneyland during the Promotion; 2) lived outside the applicable zip codes at the time of their visit; and 3) paid the nondiscounted admission price for a one-day ticket. Plaintiffs estimate that the class totals more than 4.95 million people.

In early 2002, the parties filed cross-motions for summary judgment and/or summary adjudication. The court denied plaintiffs' motion for summary judgment but granted Disney's motion for summary judgment, concluding:

"There is a significant distinction between the imposition of common carrier status for the purpose of imposing a higher standard of care upon defendants for persons injured in the course of carriage activities (planes, trains, ski lifts, etc.), or even on amusement rides, and the imposition of common carrier status for all purposes. The broad interpretation of . . . section

2168, giving rise to potential liability for price discrimination under . . . section 2170 has not been embraced by similar existing statutes or case law in other jurisdictions. This court declines to adopt the plaintiffs' expansive interpretation of *Neubauer*, a case which is easily limited to its facts and which, in any event, is not an authoritative expression of California law. [Citation.]

"In summary, the court finds as a matter of law that [Disney] is not a common carrier as to all customers who merely pay for admission to the Disneyland park. [Citation.] As a result, [Disney] is not a common carrier subjecting [it] to liability under . . . section 2170 based upon the undisputed facts of this case, and [Disney's] motion for summary judgment [as] to the first cause of action is granted.

"Without an underlying predicate act, the fourth cause of action based upon the Business & Professions Code fails as well. [Citation]."

Plaintiffs appealed the summary judgment, and Disney filed a protective cross-appeal on the court's order certifying this case as a class action.

## *DISCUSSION*

The sole issue raised by plaintiffs' appeal is whether the court erred in granting Disney summary judgment on the ground it is not a common carrier within the definition of section 2168. Plaintiffs maintain that Disney is a common carrier under section 2168 and the Promotion, which provides a price preference to residents of Southern California, violates section 2170.

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) We set forth the rules of statutory construction in *Pratt v. Vencor, Inc.* (2003) 105 Cal.App.4th 905, 909 [129 Cal.Rptr.2d 741]:

" ' "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.' [Citation.]

" ' "When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" [Citation.]' " (See also *Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639] [any statutory interpretation that would lead to absurd consequences is to be avoided].)

Section 2168 states: "Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." Section 2170 states: "A common carrier must not give preference in time, price, or otherwise, to one person over another."

We note at the outset that the California Supreme Court recently granted review to decide the issue of whether the operator of an amusement ride that starts and stops at the same place is a common carrier under section 2168 and subject to the higher standard of care set forth in section 2100.[2] (See *Gomez v. Superior Court* (2003) 110 Cal.App.4th 667 [1 Cal.Rptr.3d 860], review granted Nov. 12, 2003, S118489; see also *Barr v. Venice Giant Dipper Co., Ltd.* (1934) 138 Cal.App. 563, 564 [32 P.2d 980] [owner and operator of scenic railway in amusement park subject, where he has accepted passengers on railway, to liabilities of a carrier of passengers generally]; *Neubauer v. Disneyland, Inc., supra,* 875 F.Supp. at p. 673 [operator of amusement park ride found to qualify as "common carrier" under section 2168].)

Here, we need not reach the issue pending in *Gomez.* In fact, we find it irrelevant to our analysis in this case. There is a distinction between an individual Disneyland *ride* being determined to be a common carrier for purposes of injury liability and the entire Disneyland *park* being considered to be a common carrier. Plaintiffs do not allege liability for a physical injury based on the duty of care set forth in section 2100. Instead, they allege a pricing preference in violation of section 2170. We stated in our prior opinion:

"In this context, we view the issue of whether [Disney] is a common carrier as a 'yes or no' proposition for all who entered the park. Either [Disney], in its capacity as an amusement park and its charging of an admission price, is a common carrier as to all who pay that admission price, or it is not. Whether an individual patron elected to be a passenger on one of the rides is irrelevant to that determination. Thus, whether [Disney] is a

---

[2] Section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

common carrier would be applicable to all class members, and there would be no need for individual litigation." (*Simon v. Walt Disney World Co., supra,* F031551.)

We find no case that has addressed whether Disney is a common carrier in operating the entire Disneyland theme park as to all who pay admission. Plaintiffs' contention that Disney is a common carrier in operating its entire theme park is simply not supported by sections 2168 and 2170 or the applicable case law.

■ In order for the common carrier obligations to apply, a person or entity must first have been acting as a common carrier within the meaning of the Civil Code. The common carrier designation "does not extend to cases where the relation of carrier and passenger does not exist." (*Kataoka v. May Dept. Stores Co.* (1943) 60 Cal.App.2d 177, 182 [140 P.2d 467]; see also *McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1017–1018 [67 Cal.Rptr.2d 516].) California law has limited the scope and duration of the common carrier relationship. It begins when " 'one, intending in good faith to become a passenger, goes to the place designated as the site of departure . . . and the carrier takes some action indicating acceptance of the passenger as a traveler.' [Citation.]" (*Orr v. Pacific Southwest Airlines* (1989) 208 Cal.App.3d 1467, 1473 [257 Cal.Rptr. 18].) It ends when the passenger has safely exited the carrier's vehicle. (*McGettigan v. Bay Area Rapid Transit Dist., supra,* 57 Cal.App.4th at p. 1018.)

California courts have limited the restrictions imposed on common carriers to carriage-related activities only, exempting other activities of the carrier even if on the same property. For example, in *Falls v. San Francisco etc. R. R. Co.* (1893) 97 Cal. 114 [31 P. 901], the California Supreme Court refused to impose a common carrier duty of care on a defendant railroad whose passenger tripped over freight on the railroad's platform. The court reasoned that the carriage relationship had not yet arisen, so the railroad was bound simply to exercise ordinary care. (*Id.* at pp. 117–119.)

In *Kataoka v. May Dept. Stores Co., supra,* 60 Cal.App.2d 177, a four-year-old boy playing in a department store suffered a crushed hand in the comb plate at the bottom of a moving escalator. The boy sued the department store, seeking to impose the heightened obligations of a common carrier upon the store. Although California law holds operators of escalators to a common carrier standard, the court declined to apply that standard to the department store because the boy was not using the escalator as a means of transportation when he was injured. The court found that the boy's activities bore no relation to the matter of transportation and he could not be regarded as a passenger. (*Id.* at pp. 179–182; cf. *Vandagriff v. J. C. Penney Co.* (1964) 228

Cal.App.2d 579, 581–582 [39 Cal.Rptr. 671] [department store held to common carrier standard of care where plaintiff was injured while riding escalator].)

In *McGettigan v. Bay Area Rapid Transit Dist.*, *supra*, 57 Cal.App.4th 1011, the plaintiff alleged that the defendant transit district owed him a heightened duty of care after a train operator ordered him off the train, aware that he had been inebriated to the point of incapacity while a passenger on the train. The plaintiff later fell off the station platform and was injured. The trial court sustained a demurrer without leave to amend, and the appellate court affirmed. The court concluded that because the carrier-passenger relationship terminated when the plaintiff safely got off the train, the district could not be held to a duty beyond ordinary care. (*Id.* at pp. 1014–1015, 1017–1018.)

The limited scope of a common carrier's obligations under section 2170 was addressed in *Demeter v. Annenson* (1947) 80 Cal.App.2d 48 [180 P.2d 998]. In *Demeter*, a railroad company granted a taxi company the exclusive privilege of soliciting patronage on the railroad station's premises. Although this preference was not directly connected to the railroad's carriage of passengers, a rival taxi company argued that the contract was an illegal preference by a common carrier (the railroad) in violation of state constitutional and statutory provisions, such as section 2170. (*Demeter*, *supra*, 80 Cal.App.2d at pp. 49, 55.) The court rejected the claim, holding that the various statutory prohibitions against discriminatory agreements and practices by common carriers only relate to their "public duty as carriers," not to other relationships the common carriers may enter into with third parties in carrying on their public service activity. (*Id.* at p. 57.) The *Demeter* court noted: " 'It is evident that section 2170 . . . cannot be construed so broadly as to mean that a common carrier [cannot] in any of its dealings give any preference to one person over another. . . .' " (*Demeter*, *supra*, 80 Cal.App.2d at p. 56.)

This case law reflects that the burdens imposed by the Civil Code on common carriers do not apply before a passenger has been accepted for carriage, after a passenger has safely gotten off the carrier's vehicle, or to the carrier's other activities on its property not directly related to carriage. Here, it is undisputed that the payment of the admission price into Disneyland permits a guest to enjoy access to dozens of attractions and entertainment activities that are not amusement rides, such as parades and shows, character appearances, themed restaurants and shops, fireworks displays, stage shows, live music and arcades. When a guest purchases an admission ticket and enters the park, no carrier-passenger relationship exists at that moment. Even assuming that Disney operates as a common carrier with respect to all its amusement park rides, the carrier-passenger relationship would not exist

unless the guest enters the boarding area for a particular ride and is accepted by the ride operator as a passenger. (See *Orr v. Pacific Southwest Airlines, supra,* 208 Cal.App.3d at p. 1473.) A guest who chooses not to go on any of Disneyland's amusement rides may never enter into a carrier-passenger relationship. On the other hand, a patron who rides many rides would enter into many carrier-passenger relationships, each with a distinct beginning and end.

Plaintiffs contend that a common carrier relationship exists with respect to everyone who enters Disneyland because, by permitting guests to enter, Disney is offering to carry them on its amusement rides, as that term is used in section 2168. We do not construe section 2168 so broadly. Plaintiffs' argument is contrary to well-settled case law. The plaintiff in *Falls v. San Francisco etc. R. R. Co., supra,* 97 Cal. 114, had gone so far as to accept an offer of carriage by boarding the defendant's platform to ride a train, but no common carrier liability arose. (*Id.* at pp. 117–120.) Similarly, the plaintiff in *McGettigan v. Bay Area Rapid Transit Dist., supra,* 57 Cal.App.4th at pages 1014–1018, had accepted the defendant transit district's offer to ride the train, and did so, but the common carrier duty had terminated by the time defendant was injured. Thus, no common carrier liability arose.

Plaintiffs' reliance on *Smith v. O'Donnell* (1932) 215 Cal. 714 [12 P.2d 933] and *Champagne v. A. Hamburger & Sons* (1915) 169 Cal. 683 [147 P. 954] is misplaced. In *Smith,* two airplanes collided, injuring the plaintiff, who argued that a common carrier standard of care applied. The California Supreme Court focused on whether the defendant pilot was a common carrier or a private carrier for hire, which would call for a lower standard of care. The Court found that the distinction turns on whether the carrier offers to the public its services generally, and for all persons indifferently, or merely carries people by special arrangement. The Court determined that the pilot generally offered his services to the public and was therefore a common, rather than a private, carrier. (*Smith, supra,* 215 Cal. at pp. 715–719.) *Smith* simply has no application to this case in making the determination of whether Disney is engaged in carrier activities with respect to its theme park. In fact, the collision between the two planes at issue in *Smith* clearly occurred during carriage. (*Id.* at pp. 715–716.)

*Champagne v. A. Hamburger & Sons, supra,* 169 Cal. 683, is similarly inapposite. The issue in *Champagne* was not whether a department store with an elevator could be held to a common carrier standard for its noncarriage activities. The issue was whether the elevator in the store provided gratuitous service or carriage for reward. After noting the elevator assisted in the business operations of the store, the Court concluded that the store fit within the category of a carrier of passengers for hire in an action for injuries sustained in an elevator accident. (*Id.* at pp. 684, 690–693.)

As common carriers extend continuous and open-ended offers to the public for transportation, plaintiffs' argument would impose heightened duties upon them with regard to all of their activities, all of the time, rather than limiting those duties to when the special carrier-passenger relationship begins. Given the countless activities available to Disneyland guests other than amusement rides, the boarding place for a particular ride is the only logical place that the offer could occur. Disney is not offering to let a guest ride the Pirates of the Caribbean attraction when that guest is on the other side of the park exploring Sleeping Beauty's Castle.

■ Plaintiffs contend this interpretation renders section 2170 ineffective because patrons purchasing tickets for carriage for persons or goods do not always go to the place designated as the site of departure. The contention is unpersuasive. As the court recognized in *Demeter v. Annenson*, section 2170 cannot be construed so broadly as to preclude a common carrier, in its non-carriage activities, from giving preference to one person over another. (*Demeter v. Annenson, supra,* 80 Cal.App.2d at p. 56.) Prohibitions against discriminatory practices by common carriers only relate to their public duty as carriers. (*Id.* at p. 57.) ■ Here, the alleged discriminatory practice of Disney does not relate to its public duty as a carrier. There is no nexus between the alleged discriminatory ticket price under the Promotion and any purported carriage. Disney's alleged discriminatory admission fee is not properly linked to its status as a common carrier. In short, Disney cannot be construed as a common carrier with respect to its entire theme park.

As a result of our decision, it is unnecessary to address the issues in Disney's cross-appeal.

## *DISPOSITION*

The judgment is affirmed. Costs are awarded to Disney.

Vartabedian, Acting P. J., and Levy, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied March 30, 2004. George, C. J., and Brown, J., did not participate therein.